1  FREEDMAN & TAITELMAN, LLP
   BRYAN J. FREEDMAN (SBN 151990)
2  bfreedman@ftllp.com
   JACQUELINE C. BROWN (SBN 177970)
3  jbrown@ftllp.com
   JESSE KAPLAN (SBN 255059)
4  jkaplan@ftllp.com
   1901 Avenue of the Stars, Suite 500
5  Los Angeles, California 90067
   Tel.:  (310) 201-0005
6  Fax:  (310) 201-0045

7  Attorneys for Plaintiff MAIL.COM MEDIA CORPORATION

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12 | MAIL.COM MEDIA CORPORATION,     | CASE NO.   CV 10 9159 GW (VBKx)
   | a Delaware corporation,
13 |
   |              Plaintiff,         | **PLAINTIFF'S MOTION FOR**
14 |                                 | **EXPEDITED DISCOVERY TO**
   |         vs.                     | **IDENTIFY THE DOE**
15 |                                 | **DEFENDANTS**
   | JOHN DOE; and DOES 2 through 10,
16 | inclusive,
17 |              Defendants.
18 |                                 | Date: January 3, 2011
   |                                 | Time: 8:30 a.m.
19 |                                 | Courtroom: 10
20 |
21 |                                 | [Declaration of Jesse Kaplan filed
   |                                 | concurrently herewith]
22
23
24
25
26
27
28

1   PLEASE TAKE NOTICE THAT, Plaintiff Mail.com Media Corporation
2   ("MMC"), will move this honorable Court on January 3, 2010 at 8:30 a.m, at the
3   United States District Court for the Central District of California, located at 312 N.
4   Spring Street, Los Angeles, CA 90012, Courtroom 10, before the Honorable
5   George H. Wu, for an Order allowing MMC to obtain limited expedited discovery
6   from a third-party prior to conducting a meeting between the parties pursuant to
7   F.R.C.P 26(f).

8   Specifically, MMC seeks to serve a subpoena on Dotster, Inc. ("Dotster"),
9   the registrar of the infringing internet web site www.deadlinehollyweird.com (the
10  "Infringing Site"). The contemplated subpoena would seek the production of
11  documents that would identify the Doe defendants herein, the registrants, owners
12  and operators of the Infringing Site. Good cause exists to allow MMC to obtain
13  this discovery because the Doe defendants in this matter have cloaked their
14  identify using an anonymity registration service provided by Dotster or a Dotser
15  affiliate. Without a subpoena requiring Dotser to provide MMC with information
16  identifying the Infringing Site's registrant, MMC cannot identify the defendants
17  and prosecute this lawsuit.

18  As there are no known parties in this matter, MMC's counsel was unable to
19  meet and confer with any party pursuant to L.R. 7-3.

20
21  DATED:  December 1, 2010              FREEDMAN & TAITLEMAN, LLP
22
23
24  By: _____/ s /_____
                    BRYAN J. FREEDMAN
25                  Attorneys for Plaintiff MAIL.COM MEDIA
                    CORPORATION
26
27
28

## I.   INTRODUCTION

Plaintiff MMC must identify the Doe defendants, the registrants, owners and operators of the infringing website internet web site www.deadlinehollyweird.com (the "Infringing Site").  Unfortunately, because the Infringing Site utilized certain anonymity registration services, MMC is unable to ascertain the identity of these anonymous defendants ("Defendants").

Accordingly, MMC seeks leave of Court to serve certain limited expedited discovery on the Infringing Site's registrar that will hopefully reveal Defendants' identity.  Specifically, MMC seeks to serve a subpoena on the Infringing Site's registrar, Dotster, Inc. ("Dotster") requiring Dotser to produce documents identifying the Defendants (*See* Kaplan Decl., Ex. 7).

## II.   BACKGROUND.

### A.   The Deadline Website and the Deadline Marks.

MMC is a leading digital media company that owns www.deadline.com ("Deadline") (*See* Kaplan Decl., ¶ 2).  Deadline was founded in March 2006 by Nikki Finke, who is also Deadline's general manager and editor-in-chief.  Deadline is a popular source for breaking news and original content relating to the business, politics, and culture of the entertainment and media industries (*See* Kaplan Decl., ¶ 2).  Deadline has built a loyal and powerful community and followers.  Deadline receives millions of visits per day.

Since approximately March 2006, Ms. Finke, and now MMC, has used "Deadline," and derivations of "Deadline," including but not limited to "Deadline Hollywood," deadlinehollywood.com, and deadlinehollywooddaily.com to identify Deadline's goods and services to the consuming public.  Since June 2009, MMC is and has been the sole owner of certain inherently distinctive trademarks related to the goods and services associated with Deadline.  These inherently distinctive trademarks include prominent and distinctive artwork depicting the Hollywood sign against a blue sky backdrop overlaid with the words "DEADLINE

1    HOLLYWOOD" (the "Deadline Artwork").  The Deadline Artwork is used

2    throughout the Deadline web site including the homepage (*See* Kaplan Decl., ¶ 4,

3    Ex. 1).  Deadline, Deadline Hollywood, deadlinehollywood.com, and

4    deadlinehollywooddaily.com, and the Deadline Artwork are collectively referred to

5    herein as the "Deadline Marks."

6         **B.    Defendant's Infringement of the Deadline Marks.**

7         Like Deadline, the Infringing Site provides news relating to the business,

8    politics, and culture of the entertainment and media industries (*See* Kaplan Decl., ¶

9    3).  As such, the Infringing Site is in direct competition with Deadline.  Since its

10   recent inception, the Infringing Site has been infringing on the Deadline Marks and

11   has used the Deadline Marks and/or derivations of the Deadline Marks to identify

12   the Infringing Site (*See* Kaplan Decl., ¶¶ 3-4, Ex. 2).  In particular, the Infringing

13   Site contains the Deadline Marks.  Additionally, the Infringing Site contains

14   prominent artwork and trade dress that is confusingly similar to the Deadline

15   Artwork (*See* Kaplan Decl., Ex. 2).  Clearly, the Infringing Site has attempted to

16   capitalize and profit from Deadline's commercial success, and the good will and

17   fame associated with the Deadline Marks by attempting to confuse the consuming

18   public into believing that the Infringing Site is affiliated with, sponsored or

19   endorsed by Deadline.

20        **C.    Defendant's Use Of Dotster's Anonymity Service.**

21        Unfortunately, the Defendants have frustrated MMC's ability to ascertain

22   Defendant's identity.  Through a Dotster affiliate and/or subsidiary entity known as

23   PrivacyPost ("PrivacyPost"), Dotster and/or Privacy Post have provided

24   Defendants with a service allowing Defendants to conceal their identity and

25   contact information from the public (*See* Kaplan Decl., ¶¶ 5-7, Ex. 3-4).

26        As advertised on PrivacyPost's web site, PrivacyPost service prevents the

27   public from identifying the true registrant of the Infringing Site.  Specifically,

28   Dotster's website states that a "PrivacyPost offers participating registrars a

1  completely private registration. This is done by providing our information in the

2  WHOIS database, rather than yours." (*See* Kaplan Decl., ¶ 7, Ex. 4). As a result

3  of Dotster's service, Dotster has enabled the owners and operators of the Infringing

4  Site to continue to infringe with anonymity.

5       ### D.    MMC's Counsel's Attempts To Identify Defendants.

6            MMC's counsel has searched the WHOIS database to obtain the contact

7  information and identity of the owner of the Infringing Site (*See* Kaplan Decl., ¶

8  5). Because of Dotster's "private" registration service, the WHOIS database does

9  not provide this information. Instead, it indicates that Dotster is the registrar for

10  the Infringing Site and Dotster can be contacted on behalf of the Infringing Site

11  (*See* Kaplan Decl., ¶ 5, Ex. 3). As such, when MMC's counsel conducted a

12  WHOIS search for the Infringing Site's registrant, counsel was provided with a

13  PrivacyPost email address, a Dotster post office box address in Vancouver,

14  Washington and a PrivacyPost phone number (*See* Kaplan Decl., ¶ 5, Ex. 3).

15            MMC has also thoroughly reviewed every page contained on the Infringing

16  Site for contact and identifying information for Defendants' true identity (*See*

17  Kaplan Decl., ¶ 8). The Infringing Site does not provide any contact information

18  for Defendants or anyone associated with them (*See* Kaplan Decl., ¶ 8). Instead,

19  the Infringing Site merely states "Join us on Facebook to find out how to become a

20  *'Deadline Hollyweird'* VIP inside member! It's what all the cool kids are doing.

21  [¶] If you have something to contribute to the site (satire, parody, funny stories),

22  hit us up on the above FB link or send us an email the old fashion way at: (figure it

23  out) @gmail.com." (*See* Kaplan Decl., ¶ 8, Ex. 5). However, the Facebook page

24  for the Infringing Site also does not contain any contact or identifying information

25  for Defendants or anyone else associated with Defendants or the Infringing Site

26  (*See* Kaplan Decl., ¶ 9).

27            MMC's counsel has also reviewed and searched numerous other Internet

28  domain name research web sites to try to obtain contact and/or identifying

1   information for Defendants and/or the Infringing Site (*See* Kaplan Decl., ¶ 10).

2   Every other Internet domain name research website contains the same information

3   for the Infringing Site as found on the WHOIS database (*See* Kaplan Decl., ¶ 10).

4   　　　　Finally, MMC's counsel also contacted Dotster's legal department and

5   informally requested that Dotster Dotster identify the true registrant of the

6   Infringing Domain Name (*See* Kaplan Decl., ¶ 11).  Dotster was not willing to do

7   so (*See* Kaplan Decl., ¶ 11).

8   　　　　**E.**　　**The Complaint.**

9   　　　　On November 29, 2010, MMC filed the Complaint in this action against the

10  unknown registrant of the Infringing Site.  MMC asserted several causes of action

11  against these Defendants under the Lanham Act, including but not limited to a

12  claim for cybersquatting under Anti-Cybersquatting Consumer Protection Act, 15

13  U.S.C., § 1125(d) (the "ACPA").

14  　　　　As MMC has been unsuccessful in its attempts to identify Defendants,

15  MMC was forced to name Defendants as "Does" in the Complaint.  If MMC is

16  able to identify Defendants through the requested subpoena, MMC intends to

17  amend its Complaint to name the Defendants.

18  　　　　**F.**　　**The Proposed Expedited Discovery.**

19  　　　　MMC proposes serving a subpoena on Dotster seeking the production of the

20  following categories of documents that will hopefully identify the defendants (*See*

21  Kaplan Decl., Ex. 7).  MMC's counsel has prepared this subpoena and is ready to

22  serve it on Dotster.

23  **III.**　**GOOD CAUSE EXISTS TO ALLOW MMC TO PROPOUND**

24  　　　**DISCOVERY ON DOTSTER IN ORDER TO IDENTIFY THE**

25  　　　**DEFENDANTS.**

26  　　　　The Court may authorize expedited discovery before the Rule 26(f) meeting

27  for good cause.  *See Semitool, Inc. v. Tokyo Electron Am.,* 208 F.R.D. 273, 275

28  (N.D. Cal. 2002).  A court order permitting early discovery may be appropriate

1  "where the need for the discovery, in consideration of the administration of justice,
2  outweighs the prejudice to the responding party." *Semitool,* 208 F.R.D. at 276.

3  Good cause exists in the internet context when online defendants attempt to
4  mask their identify thereby preventing plaintiffs from prosecuting their claims
5  against internet tortfeasors. *See Liberty Media Holdings, LLC v. Doe,* 2010 U.S.
6  Dist. LEXIS 116816, *3-4 (S.D. Cal. Nov. 3, 2010) (finding good cause to allow
7  plaintiff to issue subpoenas to obtain the identity of Doe internet defendants). "[I]n
8  light of the conflict between the need to provide injured parties with a forum in
9  which they may seek redress for grievances, and the right to use the internet
10 anonymously or pseudonymously, a few principles should apply to whether
11 discovery to uncover the identity of a defendant is warranted." *Liberty Media*
12 *Holdings,* 2010 U.S. Dist. LEXIS at *3-4.

13 Here, good cause exists to allow MMC to propound the proposed subpoena
14 on Dotster so that MMC can ascertain Defendants' identify. As already discussed,
15 MMC cannot ascertain Defendants' identity without formally obtaining this
16 information from Dotster. As a practical matter, unless MMC is permitted to
17 obtain this information through expedited discovery, MMC cannot prosecute this
18 matter and protect its intellectual property rights. MMC would essentially be
19 forced to dismiss this lawsuit. Conversely, there is no chance that either
20 Defendants or Dotster would be prejudiced by the requested subpoenas.

21

22 DATED: December 1, 2010          FREEDMAN & TAITLEMAN, LLP

23

24

25                                By: _____/s/_____
                                        BRYAN J. FREEDMAN
26                                   Attorneys for Plaintiff MAIL.COM MEDIA
                                     CORPORATION
27

28